# IN THE COURT OF APPEALS OF IOWA

No. 17-1272
Filed October 11, 2017

**IN THE INTEREST OF K.J., T.J., L.J., and I.J.,**
**Minor Children,**

**L.J., Father,**
　　Appellant,

**N.D., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.


　　A mother and father separately appeal the termination of their parental

rights to their four children.  **AFFIRMED ON BOTH APPEALS.**


　　Eric W. Manning of Manning Law Office, P.L.L.C., Urbandale, for appellant

father.

　　William E. Sales III of Sales Law Firm, P.C., Des Moines, for appellant

mother.

　　Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

　　Cole Joseph Mayer of Mayer Law, PLLC, Des Moines, guardian ad litem

for minor children.

　　Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

The mother and father of four children separately appeal the termination of their parental rights. Both parents assert the State failed to prove by clear and convincing evidence the statutory grounds for termination, primarily that the children could not be returned to the parents at the present time. The mother also asserts termination is not in the children's best interests and that the record should have been reopened to include additional post-hearing information. The father asserts he should have been given additional time to work towards reunification and that he has a bond with the children, which should preclude termination.[1] On our de novo review, and agreeing with the district court's fact finding and conclusions on all issues raised, we affirm.[2] *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (noting our de novo standard of review).

## I.   Background Facts and Proceedings

The family came to the attention of the Iowa Department of Human Services (DHS) in July 2015, upon allegations the father was using methamphetamine in the home when the children were present. He tested positive for methamphetamine and amphetamine and also admitted to his use of cocaine and Adderall. A denial of critical care was founded as to the father. The mother was pregnant at the time with I.J. and claimed no knowledge of the father's drug use. The children were removed from the father's care shortly

---

[1] We need not review any step of the three-step analysis the juvenile court must make in terminating a parent's parental rights if the step was not challenged by the parent on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

[2] The children are: K.J., born 2003; T.J., born 2005; L.J., born 2013; and I.J., born 2015. Both parents' parental rights were terminated as to the three older children under Iowa Code section 232.116(1)(f) (2017), and (h) as to I.J. Just after the termination hearing concluded, a fifth child, S.J., was born, and therefore, this child is not part of these proceedings.

thereafter. The mother signed a safety plan, agreeing she would not allow the father to be around the children unsupervised. The children were adjudicated in need of assistance (CINA) on October 2, 2015. The children remained in the care of the mother until they were removed in January 2016 after it was reported she too had used methamphetamine with the children present and she was allowing the father unsupervised contact with the children. Intensive services were offered to the parents with partial success. After a two-day hearing in May 2017, the district court terminated the parental rights of both parents.

## II. Father's Appeal

The father asserts the State failed to prove the fourth element of Iowa Code section 232.116(1)(f) and (h)[3], claiming his drug use alone is insufficient to show "some harm" to the children. *See* Iowa Code § 232.102.[4] He also asserts he should have been given an additional six months to work towards reunification as he is currently working on achieving sobriety and the bond he has with the children should preclude termination.

In early March 2016—several months after the children were removed from his care—the father was arrested on drug charges. He attended residential substance abuse treatment in April on pretrial release. In June, he pled guilty to possession of a controlled substance (methamphetamine) with intent to deliver.

---

[3] The fourth element of 232.116(1)(f) (as to children age four or older) and (h) (as to children age three or younger) are similar. Under section 232.116(1)(f)(4), the State must prove "[t]here is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102." Under section 232.116(1)(h)(4) the State must prove, "(4) [t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."

[4] Section 232.102(6)(a)(2) provides, "The child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available."

In August, judgment was deferred, and he was placed on supervised probation for two years. In November, while denying any drug use, a report of probation violations was filed, which included positive drug screenings for methamphetamine on September 14, October 13 and October 25, one full year after the children were removed from his care. After stipulating to the violations, the father was again incarcerated, where he remained before entering another residential substance abuse treatment program in early February 2017. By the time of the May 2017 termination hearing, the father had participated in four substance abuse treatment programs. He was "successfully" discharged from one of those programs, yet relapsed and later began another program. His claim at the termination hearing was essentially that his success only part of the way through this latest residential program should demonstrate that he can maintain sobriety. However, it was apparent to the district court any partial success while in a controlled environment was insufficient to overcome the more than ten years of the father's substance abuse, such that the children could be returned to his care at the present time. We agree.

Nonetheless, the father argues the court should have given him an additional extension of time to work towards reunification with the children. *See* Iowa Code § 232.104(2)(b) (providing a court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). However, the father had already been given a six-month extension at the September 8, 2016 permanency hearing. It was unsuccessful—with three

subsequent positive drug tests—and there is little indication another extension would prove otherwise.

The father next asserts that he has a bond with the children that should preclude termination under section 232.116(3). While there was some supporting evidence, especially of the bond between the two older children and the father, there was also testimony from the oldest child's therapist that spoke of that child's struggles with mild depression over "the situation" and, importantly, that the child suffers from not knowing what will happen next. He needs stability and needs to be able to move past the long uncertainty brought on by his father's drug use. Moreover, the domestic conflict in the home coupled with the father's mental health problems went unaddressed by the father during the pendency of these proceedings. As the district court found, any negative impact termination has on the children is outweighed by the father's inability to meet the children's long-term needs. We affirm the termination of the father's parental rights.

**III. Mother's Appeal**

Like the father, the mother asserts the State failed to prove by clear and convincing evidence that the children could not be returned to her care at the present time pursuant to the fourth element of section 232.116(1)(f) and (h). She claims she will only stay with the father if his drug treatment is successful and, therefore, there is no evidence she would subject the children to adjudicatory harm if they were placed with her. See Iowa Code § 232.102(6)(a)(2).

Had the mother been able to extricate herself from the dysfunctional relationship with the father, these children might never have been removed from her care or they might have been returned to her care after nearly two years of

services offered to the mother. However, the mother continued to put her relationship with the father ahead of learning the skills she needed to be able to protect the children. The DHS worker testified, "The outstanding concerns are [the mother's] ability to protect the children . . . if [the father] were to relapse, her continuing need to address her mental health and learn new skills, the father's substance abuse issues, his unresolved mental health issues, and then their relationship issues." As the mother testified, "things between us have been rocky for the most part. We've been together for a very long time, so obviously there's going to be a lot of relationship issues. And we were basically teenagers when we got together." She testified she is "not willing to risk the kids anymore" but only came to that realization long after the children were removed from her care.

In addition, she has not been able to recognize when the father is using drugs, although she has testified since the first hearing in 2015 that "looking back" she could "now" see indications of when he was on drugs. Her lack of insight into the father's drug use greatly impacted her ability to protect the children. This, coupled with the ongoing domestic struggles, manipulation, codependency, and mental health issues, as well as the mother succumbing to the father's request that she use methamphetamine, compromised the mother's ability to protect the children from their dysfunctional home environment. As such, the district court was correct in finding the children could not be returned home at the present time under both section 232.116(1)(f) and (h).

The mother also asserts termination is not in the children's best interests. Since the children were removed from their home, they have been able to progress in their own physical, mental, and emotional development. *See* Iowa

Code § 232.116(2) (giving "primary consideration to the child's safety, the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child"). All four children are doing well living in the same foster home, and the foster parents have indicated they would be willing to adopt the children should the parental rights be terminated. They also agreed to allow limited contact with the parents as recommended by the oldest child's therapist. As the district court found, "[T]hese parents have repeatedly demonstrated they will put their relationship in front of the children's need of a stable, safe and loving environment." The record supports this finding, and we agree it is in the children's best interests the mother's parental rights are terminated.

The mother's final issue is the district court's failure to reopen the record after the conclusion of the termination hearing on May 5. On May 12, the couple's fifth child, S.J., was born, and on May 16, the State petitioned to have this child adjudicated in need of assistance. A contested hearing was held on July 5, and on July 26, the mother moved to reopen the termination record as to the older four children, seeking to include S.J.'s CINA record into the termination record. However, as of that date, no ruling had been made on the adjudication of S.J. The State resisted the motion to reopen the record. On July 31, the court filed its termination order, and on August 1, the court denied the motion to reopen the record without a hearing.

The State asserts this issue is not preserved as the notice of appeal only included "all adverse rulings and orders inhering therein on July, 31, 2017." We agree. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that

appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases."); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (Fall 2006) ("However error is preserved, it is not preserved by filing a notice of appeal. While this is a common statement in briefs, it is erroneous, for the notice of appeal has nothing to do with error preservation."). We also agree with the State that the mother's assertion she should have been allowed to have her motion to reopen come on for hearing was not preserved for our review because she failed to ask for a hearing at the time. Finally, the State asserts the code section under which the mother's parental rights were terminated, section 232.116(1)(f) and (h), concern whether the children can be returned home at the time of the termination hearing—May 5, not at some later date. We agree the statute is clear as to that time reference and affirm the district court's denial of the motion to reopen the record.

Having considered the issues raised by both parents on appeal, we affirm the termination of the mother's and the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**